Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3144 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Daggy vs. Chicago Kenworth | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted in part and denied in part. It is granted as to Counts I and III. It is denied as to Count II.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 4 2003 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | CLERK | | |
| TH✓ | courtroom deputy's initials | 03 SEP 23 PM | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ROBERT H. DAGGY, )
)
Plaintiff, )
) No. 02 C 3144
v. )
) Honorable Amy J. St. Eve
CHICAGO KENWORTH, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Chicago Kenworth has moved for summary judgment. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

### I. Undisputed Facts

Plaintiff Robert Daggy began working at Chicago Kenworth, Inc. ("CKI") on June 6, 1988. (R. 25-1, Def.'s Statement of Undisputed Facts ¶ 8.) CKI is in the business of selling new heavy-duty Kenworth trucks and used trucks of all types. (*Id.* ¶ 6.) It also services and sells parts for trucks. (*Id.*)

#### A. Daggy's Work as a Journeyman Truck Mechanic

Daggy worked at CKI as a journeyman truck mechanic. (*Id.* ¶ 8.) The journeyman truck mechanic position is physically demanding and requires lifting parts weighing up to 70 pounds. (*Id.* ¶ 13.) The position requires overhead lifting and above-head arm movements. (*Id.* ¶ 14.) Above-head arm movements, pulling oneself in and out of trucks and lifting objects up to 70 pounds are essential functions of the position of journeyman truck mechanic at CKI. (*Id.* ¶ 16.)

1

33

While working at CKI, Daggy was a member of Local Union 701, a machinist's union. (*Id.* ¶ 9.) He served as Local 701's union steward for CKI from approximately 1998 to 2000. (*Id.* ¶ 9.) Daggy agreed to be bound by the collective bargaining agreement entered into between Local 701 and CKI. (*Id.* ¶ 10.)

On or about September 29, 1997, Daggy tore his right rotator cuff at CKI while pulling a transmission bolt up to an engine. (*Id.* ¶ 20.) On approximately July 11, 1998, Daggy had surgery performed on his right shoulder to address this injury. (*Id.* ¶ 22.) On February 10, 1999, Daggy's doctor released him to work. (R. 28-2, Pl.'s Statement of Additional Facts ¶ 26.) Due to continuing pain and difficulty performing his job, Daggy worked with a lifting restriction. (*Id.* ¶ 27.) He continued to work at CKI until April 13, 2000 when he underwent a second surgery on his right shoulder. (*Id.* ¶ 29.) As of May 30, 2000, Daggy's doctor imposed the following restrictions on his ability to work: no overhead lifting, no lifting above waist level, no climbing into trucks and no lifting over 20 pounds. (*Id.* ¶ 37.)

In 1998, Daggy filed an Application for Adjustment of Claim with the Illinois Industrial Commission this injury. (R. 25-1, Def's Statement of Undisputed Facts ¶ 21.) On approximately March 21, 2001, Daggy's workers' compensation benefits from CKI ended. (*Id.* ¶ 26.) On or about June 29, 2001, Daggy entered into a lump-sum settlement contract with CKI's insurance carrier and settled his workers' compensation claim with CKI for the injury to his right shoulder. (*Id.* ¶ 27.)

On October 8, 2001, Daggy provided CKI with a doctor's note. (*Id.* ¶ 44.) That note indicated that Daggy could lift up to 100 pounds to waist level, up to 60 pounds from waist to shoulder and up to 40 pounds overhead. (*Id.* ¶ 44.) On October 9, 2001, Daggy contacted CKI

and requested that he return to work. (*Id.* ¶ 45.) CKI informed Daggy that there were restrictions placed upon him that were inconsistent with the collective bargaining agreement's 70 pound lifting requirement. (*Id.*)

### B. Other Employment

Daggy worked for Wise Farm Lines from March 2001 to December 2001. (*Id.* ¶ 32.) At Wise Farm Lines, Daggy loaded and unloaded concrete and steel. (*Id.* ¶ 33.) He also drove a truck, operated a dolly, unhitched trailers and performed maintenance on his truck. (*Id.* ¶ 33.) From January 2, 2002, until October 2002, Daggy worked as a truck mechanic at Trans-Service Leasing. (*Id.* ¶ 34.)

### C. Daggy's Complaint

Daggy filed a three-count complaint against CKI. In count I, Daggy alleges that CKI discriminated against him in violation of the Americans with Disabilities Act ("ADA"). In count II, Daggy contends that CKI retaliated against him for filing his discrimination charges with the Equal Employment Opportunity Commission ("EEOC"). Finally, in Count III, Daggy contends that CKI retaliated against him for exercising his rights under the Illinois Worker's Compensation Act. CKI seeks summary judgment on all three counts.

## ANALYSIS

### I. Legal Standards

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court's function is "not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986)). A genuine issue of material fact exists only if a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

In assessing whether a genuine issue of material fact exists in a case, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See id.* at 255. However, neither "the mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), is sufficient to defeat a motion for summary judgment. *See also Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998).

## II. The Americans with Disabilities Act – Count I

The ADA prohibits discriminating against an individual with a disability:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability

4

who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). In order to invoke protection under the ADA, Daggy must demonstrate that: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he has suffered an adverse employment action because of his disability. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000).

CKI seeks summary judgment on the ground that Plaintiff is not "disabled" as defined under the ADA. The ADA defines "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). *See Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995). The Court must interpret these terms "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002).

It is clear that "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Id.* at 195. In addition, Daggy must demonstrate that the impairment substantially limits one of his major life activities. *Id.*; *see also* 42 U.S.C. § 12102(2)(A). "Substantially limited" means that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.

5

The impairment's impact must also be permanent or long term." *Toyota Motor Mfg.*, 534 U.S. at 197; *see also* 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii) (2001).

If Plaintiff's condition does not rise to the level of a disability, then he cannot recover under the ADA even if Defendant CKI terminated him because of his condition. "The Act is not a general protection of medically afflicted persons . . . . If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (citation omitted). *See also Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998).

Plaintiff alleges that he is substantially limited "in his ability to lift and to perform manual tasks." He claims that his injury limits the time he spends painting the rooms of his house and playing ball with his children.

Plaintiff's lifting restrictions alone clearly do not qualify as a substantial limitation on working. As the Seventh Circuit noted in *Mack v. Great Dane Trailers,* 308 F.3d 776, 782 (7th Cir. 2002), "An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life." *See Contreras v. Suncast Corp*, 237 F.3d 756, 763 (7th Cir. 2001) (holding that forty-five pound lifting restrictions, inability to engage in strenuous work or drive a forklift for more than four hours per day fail to "constitute a significant restriction on one's capacity to work, as the term is understood within the ADA") (citations omitted). *See also Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (holding as a matter of law that "twenty-five pound lifting limitation – particularly when compared to an average person's abilities – does not constitute a significant

6

restriction on one's ability to lift, work, or perform any other major life activity"); *Aucutt v. Six Flags Over Mid-Am.*, 85 F.3d 1311, 1319 (8th Cir. 1996) (finding that plaintiff failed to show that he was substantially limited in major life activities where a "25-pound lifting restriction was the only medical limitation placed upon [plaintiff]'s activities"). In short, the undisputed facts do not show that Daggy was substantially impaired.

Further, Daggy has not demonstrated that painting and playing ball with his children are of "central importance to most people's daily lives." *Toyota Motor Mfg. v. Williams*, 534 U.S. at 197. Daggy cites his own affidavit to support this argument. Such a self-serving, conclusory evidentiary submission without support in the record is insufficient to defeat Defendant's summary judgment motion. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).

Plaintiff's shoulder injury does not substantially limit any of his major life activities. Therefore, he does not have a "disability" as defined by the ADA. Without a disability, Daggy fails to establish the first element of an ADA claim. The Court need not examine the remaining factors given that Daggy cannot prove the existence of this essential element of his *prima facia* case of discrimination under the ADA. Accordingly, Defendant's Motion for Summary Judgment on Count I is granted.

### III. Retaliation under the ADA – Count II

Defendant seeks summary judgment on Count II of Plaintiff's complaint which alleges that Defendant retaliated against Daggy for filing a charge of discrimination with the ADA. In order to establish a prima facie case of retaliation under the ADA, Daggy must demonstrate that (1) he engaged in protected activity; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate employment expectations; and (4) other similarly situated

employees who did not engage in protected activity were treated more favorably. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under this standard, the "plaintiff so proceeding need not show even an attenuated causal link." *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (citations and quotations omitted).

In its memorandum supporting summary judgment, Defendant fails to address Plaintiff's claim that CKI retaliated against him for filing a discrimination charge with the EEOC. Defendant attacks Plaintiff's claim only in its reply brief. Arguments that a party raises for the first time in a reply brief, however, are waived. *See Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002). Accordingly, Defendant's motion for summary judgment is denied as to Count II.

## III. Retaliatory Discharge – Count III

In Count III, Daggy alleges that CKI retaliated against him for filing a workers' compensation claim with the Illinois Industrial Commission. The Illinois Workers' Compensation Act makes it unlawful for an employer to retaliate against an employee for exercising his rights granted under the Act. *See* 820 Ill. Comp. Stat. 305/4(h). In Illinois, a separate cause of action also exists for retaliatory discharge if a plaintiff can establish that his employer terminated him as a result of the plaintiff's filing a workers' compensation claim. *See Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353, 357 (1978). To succeed, a plaintiff must prove the following: "(1) that [he] was an employee before the injury; (2) that [he] exercised a right granted by [the Illinois] Workers' Compensation Act; and (3) that [he] was discharged and that the discharge was causally related to [his] filing a claim under the Act." *Borcky v. Maytag Corp.*, 248 F.3d 691, 695-96 (7th Cir. 2001) (quotations omitted).

Plaintiff maintains the burden of proving these elements at all times. *Id.* at 696. Further, "[t]he element of causation is not met if [Defendant] has a valid, nonpretextual basis for discharging [Plaintiff]." *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 247 Ill. Dec. 641, 732 N.E.2d 696, 701 (2000) (citations omitted).

Daggy has failed to raise a genuine issue of fact relating to a connection between his filing for workers' compensation in 1998 and his alleged effective termination in 2001. The undisputed evidence shows that over three years elapsed between the time Daggy filed his workers' compensation claim and the time CKI terminated him. For at least a year and two months during this three-year time period, Daggy returned to work with CKI. (R. 32-1, Def.'s Resp. to Pl.'s Statement of Additional Facts ¶ 26-29.) This three year time lapse "is too tenuous to create a reasonable inference of a causal connection." *Radke v. Taco Bell Corp.*, 2003 WL 1827218 at * 3 (7th Cir. 2003). *See also Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (an "employer's adverse action [must] follow[] fairly soon after the employee's protected expression" in order to be telling temporal sequence). Further, the statements made by former CKI vice-president Baty that Daggy was not a "team player" do not support a causal link between the 1998 filing and the 2001 termination as suggested by Daggy. Daggy's reliance on inadmissible hearsay also does not help his argument. *See Elsenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Accordingly, summary judgment is granted on Count III.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. It is granted with respect to Counts I and III. It is denied with respect to Count II.

DATED: September 23, 2003           ENTERED

_____
AMY J. STEEVE
United States District Court Judge